UNITED STATES of America, Plaintiff,

v.

Marat BALAGULA, Arthur Tarricone, John Pabone, John Barberio and Dominic A. Bombace, Defendants.

No. CR 92–120–04.

United States District Court, E.D. New York.

Sept. 29, 1994.

Dana Boente, U.S. Dept. of Justice, Northern Crim. Enforcement Section, Washington, DC, for plaintiff.

Dilworth, Paxson, Kalish & Kauffman by J. Shane Creamer, Philadelphia, PA, for defendant Barberio.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW* —

WEXLER, District Judge.

Defendant John Barberio ("Barberio") was convicted in the United States District Court for the Eastern District of New York of offenses related to his participation in a federal gasoline excise tax evasion scheme. Defendant appealed to the Second Circuit and one of the issues on appeal was whether defendant was afforded ineffective assistance of trial counsel. The Second Circuit Court of Appeals affirmed in part and remanded on the issue of ineffective counsel. *United*

*States v. Tarricone*, 996 F.2d 1414 (2d Cir. 1993). After a hearing, the District Court found that counsel was competent. Defendant took a second appeal. The Second Circuit affirmed that decision. However, at this second appeal, defendant raised for the first time an issue of prosecutorial misconduct. Accordingly, the Second Circuit remanded the case to the District Court once again to determine whether the prosecution engaged in misconduct. On July 27 and 28, 1994, this Court held a hearing on the issue. Based on the matters presented at the hearings and based on the trial record, the Court makes the following findings of fact:

### FINDINGS OF FACT

1. The government possessed an analysis of the handwriting on the front page of the Beck Equities Throughput Agreement[1] as of September 1989 prepared by Lawrence DeVries ("DeVries"), an IRS expert. DeVries concluded that the handprinting and numerals were authored by Anthony Marrale ("Marrale").

2. The government had reason to doubt the validity of DeVries' analysis. DeVries analyzed the handwriting of Eugene Montesi ("Montesi") and concluded that "there is no evidence to indicate Montesi authored any of the entries in question." Montesi, however, later admitted to authoring some of the entries. Additionally, Montesi testified that Anthony Marrale used the alias "Herb Kane" and signed agreements as such. Despite analyzing those entries, DeVries did not identify the Kane signatures as having been authorized by Marrale.

3. Although the language "there is no evidence" in DeVries' report is ambiguous and subject to misinterpretation, the government concluded that the phrase meant that the exemplars were not authored by Montesi.

4. In his December 1991 Grand Jury testimony, Marrale never identified the handwriting on the first page of the Throughput Agreement, but admitted only that the signature "Herb Kane" on the last page "could have been" his. Additionally, the government suspected that Marrale committed perjury during his 1988 Grand Jury appearance.

5. In his December 1991 Grand Jury appearance, Louis Capossela ("Capossela") provided immunized testimony in which he identified the writing on the first page of the Throughput Agreement as Barberio's. Joanne DeVito ("DeVito") independently corroborated Capossela's testimony that it was Barberio's writing on the front page of the Throughput Agreement.

6. As a secretary in the Shoreline office, DeVito was familiar with Barberio's handwriting. Neither Capossela nor DeVito was aware of the IRS expert's handwriting report that identified the writing as Marrale's. The government deemed it unnecessary to contact the IRS expert to confirm the handwriting report in light of the DeVito/Capossela testimony.

7. By December 2, 1991 the government had decided to reject the IRS handwriting report.

8. The prosecution fully disclosed the existence of the expert's report indicating that the writing on the Throughput Agreement was Marrale's and not Barberio's.

9. Through counsel, Barberio denied and continues to deny that it is his handwriting on the Throughput Agreement.

10. Barberio, through counsel, made no attempt to show that the Capossela or DeVito testimony was perjured. This Court now finds that said testimony was clear and convincing and not perjured.

11. At both the ineffectiveness of counsel hearing and the prosecutorial misconduct hearings, defendant's expert witness, Paul Osborn, identified the handwriting on the Throughput Agreement as being Marrale's and not Barberio's.

12. There was a concession by the government during the ineffectiveness of trial counsel hearing that if the defendant called a handwriting expert that expert would testify that the handwriting was not that of Barberio. Despite this concession, the expert was called and so testified. The purpose of the government's concession was to expedite the

---

1. Familiarity with the relevant facts of this case     is assumed.

hearing. The government in no way conceded that the handwriting in question was not, in fact, Barberio's.

### CONCLUSIONS OF LAW

1. The difference in opinion as to who authored the handprinting on the Beck Equities Throughput Agreement between the laypersons Capossela and DeVito and the IRS expert DeVries does not render the layperson testimony perjury. Mere inconsistencies do not reach the level of perjury where defendant had full knowledge of the inconsistencies and ample opportunity to impeach the witnesses. *See United States v. Douglas,* 874 F.2d 1145, 1160 (7th Cir.1989).

2. The government was reasonable in doubting the IRS expert handwriting report and in relying on the testimony of DeVito and Capossela who this Court, after twice hearing their testimony, finds credible. Thus, the government had no reason to believe the DeVito/Capossela testimony was false. Accordingly, even if the use of testimony known by the government to be incorrect but not perjured is sufficient to rise to the level of prosecutorial misconduct, no such misconduct took place in this case.

3. Given Marrale's equivocal answers and the fact that he was suspected of perjuring himself in his 1988 Grand Jury appearance, the government was reasonable in rejecting his testimony.

4. A new trial will only be granted "on the basis of the prosecution's use of perjured testimony, if the defendant establishes that [ ] the prosecution's case included perjured testimony." *Douglas,* 874 F.2d at 1159. Therefore, since the defendant has not established that the prosecution used perjured testimony, the Court finds that there was no prosecutorial misconduct.

Accordingly, the defendant's motion for a new trial is denied.

SO ORDERED.